**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SEGA CORPORATION and SEGA OF AMERICA, INC., <br><br>             Plaintiffs, <br><br>   v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," <br><br>             Defendants. | Case No. 26-cv-06432 <br><br> **Judge Andrea R. Wood** <br><br> **Magistrate Judge Albert Berry, III** |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiffs Sega Corporation and Sega of America, Inc. ("Sega" or "Plaintiffs") submit this Memorandum in support of their *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, and expedited discovery.

i

**Table of Contents**

I.    **INTRODUCTION AND SUMMARY OF ARGUMENT** .................................................. 1

II.    **STATEMENT OF FACTS** ................................................................................................. 2

    a.    Sega's Intellectual Property and Genuine Products ...................................................... 2

    b.    Defendants' Unlawful Activities ................................................................................... 3

III.    **ARGUMENT** ...................................................................................................................... 4

    a.    Standard for Temporary Restraining Order and Preliminary Injunction ...................... 5

    b.    Sega Will Likely Succeed on the Merits ....................................................................... 6

        i.    *Sega Will Likely Succeed on Its Trademark Infringement and Counterfeiting and False Designation of Origin Claims* ............................................................................ 6

        ii.    *Sega is Likely to Succeed on Its Copyright Infringement Claim* ................................ 8

    c.    There Is No Adequate Remedy At Law, and Sega Will Suffer Irreparable Harm in the Absence of Preliminary Relief ...................................................................................... 9

    d.    The Balancing of Harms Tips in Sega's Favor, and the Public Interest is Served by Entry of the Injunction ................................................................................................. 10

IV.    **THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE** ..................................... 12

    a.    A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the Sega Trademarks and the Sega Copyrighted Works is Appropriate ........ 12

    b.    Preventing the Fraudulent Transfer of Assets Is Appropriate ............................................ 12

    c.    Plaintiffs Are Entitled to Expedited Discovery .................................................................... 14

V.    **A BOND SHOULD SECURE THE INJUNCTIVE RELIEF** ........................................ 15

VI.    **CONCLUSION** ...................................................................................................................... 15

**MEMORANDUM OF LAW**

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs are requesting temporary *ex parte* relief based on an action for trademark infringement and counterfeiting, false designation of origin, and/or copyright infringement against the defendants identified on Schedule A to the Complaint (collectively, the "Defendants"). As alleged in Plaintiffs' Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling products using infringing and counterfeit versions of Sega's federally registered trademarks, unauthorized copies of Sega's federally registered copyrighted works, or both (collectively, the "Unauthorized Products") through at least the fully interactive e-commerce stores operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases").

Defendants run a sophisticated operation and have targeted sales to Illinois residents by setting up and operating e-commerce stores using one or more Seller Aliases  through which Illinois residents can purchase Unauthorized Products. The e-commerce stores operating under the Seller Aliases share identifiers establishing a logical relationship between them. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Sega's intellectual property rights with impunity. Further, Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal their identities and the full scope and interworking of their operation. Sega is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of its registered copyrights, as well as to protect unknowing consumers from purchasing Unauthorized Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Plaintiffs respectfully request this Court to issue an *ex parte*

1

Temporary Restraining Order.

## II.   STATEMENT OF FACTS

### a.   Sega's Intellectual Property and Genuine Products

Sega is a multinational video game, entertainment, and animation company, as well as a former manufacturer of home computers and video game consoles. *See* Declaration of Robert Johns (the "Johns Declaration") at ¶ 4. Known as one of the most iconic developers in the video game industry, Sega has successfully developed and launched multiple video game franchises including *Sonic the Hedgehog. Id.*

Sonic the Hedgehog is Sega's most famous video game character. *Id.* at ¶ 5. Since the 1991 release of the first *Sonic the Hedgehog* game, the *Sonic the Hedgehog* video game series has gained worldwide popularity, with Sega generating at least 1.38 billion downloads of the series to date. *Id.* In addition to the *Sonic the Hedgehog* video game series, Sega has developed a variety of Sonic the Hedgehog initiatives globally, including movies, animation, music, and merchandising. *Id.* Sega has also registered a multitude of works related to the Sonic the Hedgehog franchise and the characters embodied therein with the United States Copyright Office (the "Sega Copyrighted Works"). *Id.* at ¶ 9. Since first publication, the Sega Copyrighted Works have been used on Sega Products and are featured on Sega's official websites. *Id*. at ¶ 10.

Sega markets and sells a variety of products, including video games and video game consoles; accessories like key chains; backpacks; face masks; cell phone covers; apparel including t-shirts and sweatshirts; household items such as water bottles, mugs, blankets, and pillows; and other collectibles such as plush toys, comics, and toys (collectively, "Sega Products"). *Id.* at ¶ 11. Sega Products have become enormously popular and even iconic, driven by Sega's quality standards and innovative designs. *Id.* at ¶ 12. Among the purchasing public, Sega Products are

instantly recognizable as such. *Id.* The Sega and Sonic the Hedgehog brands have become global successes and Sega Products are among the most recognizable in the world. *Id.* Sega Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois such as Amazon, Old Navy, Target, Walmart, Best Buy, GameStop, and Kohl's, and through the official shop.sega.com website. *Id.*

Sega has also used the SEGA and SONIC THE HEDGEHOG trademarks, and other trademarks, for many years and has continuously sold products under its trademarks (collectively, the "Sega Trademarks"). *Id.* at ¶ 13. The Sega Trademarks are registered with the United States Patent and Trademark Office. *Id.* at ¶ 14. The Sega Trademarks are valid, subsisting, and in full force and effect. *Id.* The Sega Trademarks are distinctive when applied to Sega Products, signifying to the purchaser that the products come from Sega and are manufactured to Sega's quality standards. *Id.* at ¶ 15. The Sega Trademarks constitute *prima facie* evidence of their validity and of Sega's exclusive right to use the Sega Trademarks pursuant to 15 U.S.C. § 1057(b). The Sega Trademarks are also famous marks, as that term is used in 15 U.S.C. § 1125(c)(1). *Id.* at ¶ 16.

b. Defendants' Unlawful Activities

The success of the Sega and Sonic the Hedgehog brands has resulted in significant counterfeiting of the Sega Trademarks and infringement of the Sega Copyrighted Works. *Id.* at ¶ 20. Because of this, Sega has implemented a brand protection program by investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. *Id.* Recently, Sega has identified many fully interactive e-commerce stores offering products on online marketplace platforms, including the e-commerce stores operating under the Seller Aliases, which were offering for sale and/or selling Unauthorized Products to consumers in this Judicial District and

3

throughout the United States. *Id.*

Sega's well-pleaded allegations regarding registration patterns, similarities among the e-commerce stores operating under the Seller Aliases, similarities between the Unauthorized Products sold by Defendants, and common tactics employed to evade enforcement efforts, establish a logical relationship among the Defendants and demonstrate that Defendants are interrelated. *See id.* at ¶¶ 22-30.

## III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Sega's reputation and the goodwill symbolized by the Sega Trademarks and Sega Copyrighted Works. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from the sale of Unauthorized Products and would preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new e-commerce stores under new aliases and move any assets to offshore bank accounts outside the jurisdiction of this Court. *See* Declaration of Martin F. Trainor (the "Trainor Dec.") at ¶¶ 2–4. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers before temporary injunctive relief … can be granted"). As such, Sega respectfully requests that this Court issue the

4

requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act, 17 U.S.C. § 501, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target their business activities at consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the Seller Aliases. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars, and, on information and belief, sell Unauthorized Products to residents of Illinois. *See* Complaint at §§ 2, 28, 36-37. *See NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022) ("[I]n assessing purposeful direction, what matters is [the defendant's] structuring of its own activities so as to target the Illinois market"). As such, each Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Sega substantial injury in Illinois.

### a. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 (N.D. Ill. 2019) (collecting cases). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*,

5

237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id*. The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms needs to favor the movant's position. *Id*.

    b. <u>Sega Will Likely Succeed on the Merits</u>

        i. *Sega Will Likely Succeed on Its Trademark Infringement and Counterfeiting and False Designation of Origin Claims*

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). A Lanham Act trademark infringement claim has two elements. *See* 15 U.S.C. § 1125(a). First, Plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, a Plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id*.

The Sega Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office. The Sega Trademarks have been continuously used and never abandoned. Johns Declaration at ¶ 16. The registrations for the Sega Trademarks constitute *prima*

*facie* evidence of their validity and of Sega's exclusive right to use the Sega Trademarks pursuant to § 1057(b). Furthermore, Sega has not licensed or authorized Defendants to use any of the Sega Trademarks, and none of the Defendants are authorized retailers of Sega Products. *Id.* at ¶ 23.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from certain Defendants' use of the Sega Trademarks. The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products/services; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Sega has submitted extensive documentation showing that certain Defendants are selling Unauthorized Products that look similar to Sega Products and use infringing and counterfeit marks identical to the Sega Trademarks. *See* Johns Declaration at ¶ 21. Those Defendants sell products using the Sega Trademarks to the same consumers that Sega targets. *Id.* at ¶¶ 12, 22. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing Sega Products from Unauthorized Products. The same Defendants are intentionally trying to induce consumers to purchase Unauthorized Products by advertising Unauthorized Products using the Sega Trademarks and/or by copying the Sega Copyrighted Works. *Id*. at ¶ 23.

Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as a Sega Product. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, Sega is likely to establish a prima facie case of trademark infringement and counterfeiting and false designation of origin.

> ii. *Sega is Likely to Succeed on Its Copyright Infringement Claim*

The United States Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner … is an infringer of the copyright." 17 U.S.C. § 501. Among these exclusive rights granted to Sega under the Copyright Act is the exclusive right to reproduce, prepare derivative works of, distribute copies of, and display the Sega Copyrighted Works to the public. 17 U.S.C. § 106.

To establish a claim for copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007) (internal citations omitted). Copying can be shown through direct evidence, or it can be inferred where a defendant had access to the copyrighted work and the accused work is substantially similar. *Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097, 1102 (N.D. Ill. 2005). To determine whether there is a substantial similarity that indicates infringement, courts use the "ordinary observer" test which asks whether "an ordinary reasonable person would conclude that the defendant unlawfully appropriated protectable expression by taking material of substance and value." *Id.* A work may be deemed infringing if it captures the "total concept and feel of the copyrighted work." *Id.*

With respect to the first element, Sega is the owner of the Sega Copyrighted Works, including the distinctive characters embodied therein. *See Penguin Random House LLC v. Colting*,

8

270 F. Supp. 3d 736, 746 (S.D.N.Y. 2017) ("copyright law *does* protect characters who are sufficiently delineated to be original") (citing *Gaiman v. McFarlane*, 360 F.3d 644, 660 (7th Cir. 2004) ("[n]o more is required for a character copyright")). Regarding the second element, certain Defendants are willfully and deliberately reproducing the Sega Copyrighted Works in their entirety and are willfully and deliberately distributing copies of the Sega Copyrighted Works to the public by sale. Those Defendants' unauthorized copies are identical or substantially similar to the Sega Copyrighted Works. As this type of copying directly infringes Sega's rights under 17 U.S.C. § 106, Sega has proved it has a reasonable likelihood of success on the merits of its copyright infringement claim.

c. There Is No Adequate Remedy At Law, and Sega Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Because Sega has shown a likelihood of success on the merits on its trademark infringement claim, Sega is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a). The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000)). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation. *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979).

9

Additionally, irreparable injury in copyright infringement cases is shown when "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (citing *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). For example, an injury that "is not easily measurable in monetary terms, such as an injury to reputation or goodwill, is often viewed as irreparable." *Enverve, Inc v Unger Meat Company*, 779 F. Supp. 2d 840, 844 (N.D. Ill. 2011) (citing 11A Charles Alan Wright, Arthur Miller, Mary Kay Kane, Richard L. Marcus, *Federal Practice and Procedure* § 2948.1 (2d ed.)).

Defendants' unauthorized use of the Sega Trademarks and/or Copyrighted Works has and continues to irreparably harm Sega through diminished goodwill and brand confidence, damage to Sega's reputation, loss of exclusivity, and loss of future sales. Johns Declaration at ¶¶ 31–35. The extent of the harm to Sega's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law); *Salinger* 607 F.3d at 81 ("to prove the loss of sales due to infringement is … notoriously difficult") (citing *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971) (Friendly, C.J.).

For the reasons stated above, Sega will suffer immediate and irreparable injury, loss, or damage if an *ex parte* TRO is not issued in accordance with Federal Rule of Civil Procedure 65(b). Johns Declaration at ¶ 36.

      d. <u>The Balancing of Harms Tips in Sega's Favor, and the Public Interest is Served by Entry of the Injunction</u>

As noted above, if the Court is satisfied that Sega has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if

10

preliminary relief is not granted, then it must next consider the harm Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that Sega will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, the Defendants infringing the Sega Trademarks are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n.*, 929 F. Supp. 473, 478 (D.D.C. 1996).

Additionally, as willful copyright infringers, the Defendants infringing the Sega Copyrighted Works are entitled to little equitable consideration. *See My-T Fine Corporation v. Samuels*, 69 F.2d 76, 78 (2d Cir. 1934). There is also a genuine public interest in upholding copyright protections. *See Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1066 (7th Cir. 1994) (quoting *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) ("[i]t is virtually axiomatic that the public interest can only be served by upholding copyright protections…")).

As Sega has demonstrated, Defendants have been profiting from the sale of Unauthorized Products. Thus, the balance of equities tips decisively in Sega's favor. The public is currently under the false impression that Defendants are operating their e-commerce stores with Sega's approval and endorsement. In this case, the injury to the public is significant, and the injunctive relief Sega

11

seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …" 15 U.S.C. § 1116(a).

### a. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the Sega Trademarks and the Sega Copyrighted Works is Appropriate

Sega requests a temporary injunction requiring Defendants to immediately cease all use of the Sega Trademarks or substantially similar marks, and/or copying and distribution of the Sega Copyrighted Works on or in connection with all e-commerce stores operating under the Seller Aliases. Such relief is necessary to stop the ongoing harm to the Sega and Sonic the Hedgehog brands and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the Sega Trademarks and/or copying and distribution of the Sega Copyrighted Works. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet. Sega is currently unaware of the true identities and locations of the Defendants, as well as other e-commerce stores used to distribute, sell, and offer to sell Unauthorized Products. Many courts have authorized immediate injunctive relief in similar cases involving trademark counterfeiting and infringement. *See, e.g., XYZ Corporation v. The P'ships*, No. 22-cv-01002 (N.D. Ill. Mar. 7, 2022) (unpublished) (Order granting *Ex Parte* Motion for Temporary Restraining Order).

### b. Preventing the Fraudulent Transfer of Assets Is Appropriate

Sega requests an *ex parte* restraint of Defendants' assets so Sega's right to an equitable

accounting of Defendants' profits from Unauthorized Product sales is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Sega meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when a plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). Additionally, Sega has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act, 15 U.S.C. § 1117(a)(1), Sega is entitled, "subject to the principles of equity, to recover … defendant's profits." Sega has also shown a strong likelihood of succeeding on the merits of its copyright infringement claim and is therefore entitled to recover "… any profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504(b). Sega's Complaint seeks, among other relief, that Defendants account for and pay to Sega all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Sega's request for a prejudgment asset freeze to preserve relief sought by Sega.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund*, 527 U.S. 308, 325 (1999)). Because the tobacco company sought a disgorgement of

13

the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.*

Sega has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore accounts. Accordingly, an asset restraint is proper.

    c.   <u>Plaintiffs Are Entitled to Expedited Discovery</u>

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Sega respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The expedited discovery requested in Sega's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., XYZ Corporation v. The P'ships*, No. 22-cv-01002 (N.D. Ill. Mar. 7, 2022) (unpublished). Sega's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Sega respectfully requests that expedited discovery be granted.

## V.     A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Sega's evidence of trademark infringement and counterfeiting, copyright infringement, and false designation of origin claims, Sega respectfully requests this Court require Sega to post a bond of no more than ten thousand U.S. dollars ($10,000.00). *See, e.g., Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 910-11 (N.D. Ill. 2015) ($10,000 bond).

## VI.     CONCLUSION

Defendants' unlawful operations are irreparably harming Sega's business, its Sega and Sonic the Hedgehog brands, and United States consumers. In view of the foregoing and consistent with previous similar cases, Sega respectfully requests that this Court enter a TRO in the form submitted herewith.

15

Dated this 9th day of June 2026.        Respectfully submitted,


/s/ Martin F. Trainor
Martin F. Trainor
Alexander Whang
Victor B. Chahin
TME Law, P.C.
10 S. Riverside Plaza
Suite 875
Chicago, Illinois 60606
708.475.1127
martin@tme-law.com
alexander@tme-law.com
victor@tme-law.com

*Counsel for Plaintiffs Sega Corporation and Sega of America, Inc.*

16